# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RUTH A. HESLUP,<br><br>Plaintiff,<br><br>v.<br><br>FALCON TRANSPORT COMPANY,<br><br>Defendant. | No. 15 C 1184<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Falcon Transport Company's Motion for Summary Judgment. Plaintiff Ruth A. Heslup ("Heslup"), a former employee-in-training of Defendant Falcon Transport Company ("Falcon") brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.* Plaintiff, a black female who was 61 years old at the time of her termination, alleges that she was terminated from the Falcon training program on the basis of her race, sex, and age.

For the following reasons, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

Plaintiff Ruth Heslup was a black female, aged 61, when the relevant events of this case took place. After resigning from a law enforcement position at the University of Illinois at Chicago due to alleged unfair treatment, Heslup attended tractor trailer driving school in April and May of 2014. From June 10 to June 16, 2014, Heslup attended orientation training with Falcon Transport Company's affiliate, G.D. Leasing of Indiana, Inc., where she struggled to perform her training tasks. Heslup scored 75%, 85%, 82% and 65% on her written examinations

and her evaluations included comments such as: "Pulled out in front of moving vehicle to make right turn—Coasted round (2) two off ramp curves from I-94 to I-65 and 15th Ave exit" and "poor gear selection!—no comprehension of turns etc!". Chuck Greenawalt, one of Heslup's orientation trainers, told Heslup that she "scared him on the highway."

On or about June 20, 2014, Heslup and another trainee, Henderson Ray Carroll ("Carroll"), rode from Sauk Village, Illinois to Austintown, Ohio with Falcon trainer Robbie Harmon ("Harmon"). Carroll had received scores of 100% on all his written examinations and received grades of "excellent" or "good" in the majority of categories on his final evaluation.

Heslup and Harmon had a good working relationship during the first week of training, but Harmon grew increasingly concerned about Heslup's ability to safely operate the tractor trailer. Harmon gave Heslup a grade of "Poor" in the area of shifting and wrote in her evaluation that Heslup needed help shifting, backing, relaxing, and clutching. Other issues included failing to downshift after breaking, causing the tractor trailer to stall; struggling to control the tractor trailer's position and failing to check its position; and struggling to keep the tractor trailer within its lane, among other concerns.

Harmon went on vacation during the second and third weeks of training, but kept in touch with Heslup even as Frank Grachanin ("Grachanin"), Michelle Rauch ("Rauch") and James Wells ("Wells") took over training. Heslup has no complaints regarding her treatment by Grachanin, Rauch, or Wells. Grachanin's evaluation included concerns that Heslup regularly increased chances of collision by driving below the speed limit, releasing the tractor trailer's break valves without keeping her foot on the break, causing the tractor trailer to stall, and driving in a timid and nervous manner. Grachanin observed that Heslup needed improvement and assistance with shifting, city driving, mountain/hill driving, highway driving, and general

driving.

When Harmon returned, Heslup was given the option of continuing her training with Grachanin, Rauch, and Wells or returning to work with Harmon. She opted to finish her training with Harmon. Heslup noted that this time around, Harmon seemed "a little quiet and distant." Harmon had Heslup do a walk-around of the tractor trailer to see if she could spot any issues with the vehicle before starting the trip. Harmon noted that Heslup failed to notice several issues including that the trailer lights were malfunctioning and the electrical line (known as the "pigtail") from the tractor to the trailer was disconnected. Harmon reported that Heslup became defensive and upset when informed of her mistakes and refused to admit that she had made an error regarding the pigtail. Heslup later explained in her briefing of this motion that, "When Robbie Harmon told me the reason the lights weren't working was because the 'pigtail' wasn't connected, I didn't know what she was talking about. At my school, during training, the electrical connector was not referred to as 'pigtail.'"

On Tuesday, July 15, 2014, Heslup and another driver nearly collided while Heslup drove the tractor trailer through a highway construction zone. Heslup claims that the other driver was responsible for the near accident, hypothesizing that he may have been texting. Harmon believes Heslup was responsible because she encroached on the other lane of traffic, nearly pushing the cars in that lane into a concrete barrier. Harmon told Heslup to re-center the trailer in the lane and to check her mirrors, but Heslup denied any wrongdoing. Heslup reports that Harmon grew upset and yelled at her about the near accident. She also complains that Harmon pointed her finger in Heslup's face.

After this incident, Harmon took over driving and completed the trip herself due to her safety concerns regarding Heslup's driving and unwillingness or inability to follow instructions

or accept corrections. While Harmon remained polite and friendly, even buying Heslup's dinner that night, she no longer felt safe as a passenger in a car driven by Heslup. In a conversation about the near accident the following day, Harmon reports that Heslup denied responsibility, stating, "I'm bigger than them, they can move," in reference to the other cars on the road. Heslup claims that Harmon then yelled at her again and referenced a personal story about relatives killed by a truck driver. Then, according to Heslup, Harmon called Falcon's Driver Recruiter Melanie Phelan ("Phelan") and told Phelan that Heslup could not drive, would not listen to Harmon, and that Harmon refused to continue training Heslup due to her unsafe driving and refusal to accept responsibility for her mistakes. Harmon has only refused to train one other individual (a white male) based on safety and performance concerns.

Heslup's training was discontinued after July 16, 2014. Her final evaluation included comments like "Blamed all mistakes on others," and "refused to listen. She said she was an excellent driver & it doesn't matter if trailer sways all trucks do it."

On July 17, 2014, Falcon's Gary Boring ("Boring") informed Heslup that she had been terminated as a trainee. Heslup alleges that Boring arbitrarily and discriminatorily fired her and speculates he may have been dating Harmon. She says she asked why she was not offered the same opportunities as "the white, younger male trainee that was trained directly before me" and said she received no answer. Falcon's Driver Separation Form states that Heslup was terminated "for very poor safety habits and the unwillingness to correct mistakes."

Heslup went on to work as a trainee and tractor trailer driver for Swift Transportation Co. from July 2014 to December 2014. She caused a collision with another company-owned tractor trailer and resigned to avoid termination and "preserve [her] reputation." As of June 25, 2015, Heslup was working as a probationary employee for the Salvation Army as a box truck

driver.

Heslup filed this lawsuit on March 19, 2015, alleging employment discrimination on the basis of age, race, and sex. On February 12, 2016, after this Motion for Summary Judgment had been briefed, this Court granted Defendant's Motion to Strike Portions of Plaintiff Ruth A. Heslup's Response to Falcon's Local Rule 56.1(a)(3) Statement of Facts and to deem the corresponding paragraphs in Falcon's Statement admitted. As a result, virtually all of Falcon's Statement of Facts have been deemed admitted.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether any genuine fact issue exists, the court must assess the proof as presented in the record, including depositions, answers to interrogatories, admissions, and affidavits, to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Fed. R. Civ. P. 56(c); *Scott v. Harris,* 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704 (7th Cir. 2011). If a claim or defense is factually unsupported, the court should dispose of it at the summary judgment stage. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. In response, the non-moving

party cannot rest on bare pleadings but must designate specific material facts showing there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 598 (7th Cir.2000).

**B. Title VII and ADEA Legal Standards**

The ADEA prohibits employers from discriminating against employees who are 40 years old or older because of their age. 29 U.S.C. §§ 623(a)(1); 631(a). Title VII makes it unlawful for employers to discriminate against employees because of their sex or race. 42 U.S.C. § 2000e, *et seq.* "In order to succeed in a Title VII lawsuit, a plaintiff must show that he is a member of a class protected by the statute, that he has been the subject of some form of adverse employment action ... and that the employer took this adverse action on account of the plaintiff's membership in the protected class." *Morgan v. SVT, LLC,* 724 F.3d 990, 995 (7th Cir.2013) (citing *Coleman v. Donahoe,* 667 F.3d 835, 863 (7th Cir.2012) (Wood, J., concurring)).

In responding to a defendant's motion for summary judgment on a Title VII or ADEA claim, a plaintiff may proceed via the "direct" or "indirect" method as laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). No matter how the plaintiff proceeds, the Seventh Circuit has warned that although courts may get lost in the "technical nuances" of the two methods, the "central question at issue is whether the employer acted on account of the plaintiff's race (or sex, disability, age, etc.)." *Morgan,* 724 F.3d at 996–97; *see also Van Antwerp v. City of Peoria,* 627 F.3d 295, 297 (7th Cir.2010).

Here, Heslup has not alleged direct evidence of discrimination, so my analysis is based on the indirect, burden-shifting analysis. This method requires Plaintiff to show that "(1) she was a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of her

protected class were treated more favorably." *Han v. Whole Foods Market Group*, 44 F.Supp.3d 769, 792 (N.D. Ill. 2014); *McDonnell Douglas*, 411 U.S. 792.

## III. DISCUSSION

Because I granted Defendant's motion to strike major portions of Heslup's Rule 56 statement, all of Defendant's material statements of fact have been deemed admitted. On this record, Heslup has not offered any evidence supporting elements two or four of the indirect method of proof. That is, she has not shown that she was meeting her employer's legitimate expectations, as demonstrated by the numerous written and verbal critiques her supervisors at Falcon recorded regarding her job performance and attitude. She also has not shown that any similarly situated employees outside of her protected class were treated more favorably, as the only other named employee, Henderson Ray Carroll, performed measurably better than Heslup and is thus not a comparable employee. Plaintiff's failure to prove her case by either the direct or indirect method concludes the analysis.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and this case is terminated.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 21, 2016